FILED

FEB 22 2008
Feb 22 2008
Judge Robert W. Gettleman
United S:           Court

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 07 CR 740 |
| vs. ) | Judge Robert W. Gettleman |
| ) | |
| GUADALUPE RAUL MARTINEZ, ) | |
| also known as "Raul ) | |
| Martinez-Guadalupe" ) | |

## PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant GUADALUPE RAUL MARTINEZ, also known as "Raul Martinez-Guadalupe" and his attorney, ROBERT A. KORENKIEWICZ, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charge in This Case

2. The indictment in this case charges defendant with being an alien who had previously been deported and removed from the United States on or about October 23, 1997 and again on or about June 28, 2006, and thereafter was present on October 11, 2007 at Chicago in the Northern District of Illinois, Eastern Division and found in the United States without having previously obtained the express consent of the Secretary of the Department of Homeland Security for reapplication by the defendant for admission into the United States, in violation of Title 8, United States Code, Sections 1326(a) and 1326(b)(2), and Title 6, United States Code, Section 202(4).

3. Defendant has read the charge against him contained in the indictment, and that charge has been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crime with which he has been charged.

### Charge to Which Defendant is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the indictment. The indictment charges defendant with being an alien who reentered the United States after having previously been deported and removed from the United States without having previously obtained the express consent of the Secretary of the Department of Homeland Security for reapplication by the defendant for admission into the United States, in violation of Title 8, United States Code, Sections 1326(a) and 1326(b)(2), and Title 6, United States Code, Section 202(4).

### Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charge contained in the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

On or about October 11, 2007, at Chicago, in the Northern District of Illinois, Eastern Division, GUADALUPE RAUL MARTINEZ, an alien who had previously been deported and removed from the United States on or about October 23, 1997 and again on or about June 28, 2006, was present and found in the United States without having previously

obtained the express consent of the Secretary of the Department of Homeland Security for reapplication by the defendant for admission into the United States, in violation of Title 8, United States Code, Sections 1326(a) and 1326(b)(2), and Title 6, United States Code, Section 202(4).

More specifically, the defendant acknowledges that he is a native and citizen of Mexico and has no claim to United States citizenship or lawful residence. Defendant was born in Mexico on July 13, 1973 and most recently entered the United States near El Paso, Texas on or about September 1, 2007, without being inspected, or admitted after inspection by an officer of Immigration and Customs Enforcement.

Prior to this instance of entering the United States, on March 18, 1994, in the Circuit Court of Cook County, Illinois, the defendant was present in the United States and was convicted of attempted murder, aggravated battery with a firearm, aggravated discharge of a firearm, and aggravated battery (three counts). He was sentenced to six (6) years imprisonment on each count, except for the aggravated battery counts, for which he was sentenced to five (5) years imprisonment on each count. The sentences were to run concurrently.

Following the aforementioned convictions, Defendant appeared before an Immigration Judge, who ordered the defendant's removal from the United States. Defendant was lawfully removed from the United States to Mexico at El Paso, Texas on October 23, 1997. Defendant was warned of the potential penalties for attempting to re-enter and re-

entering the United States without the prior consent of the Attorney General of the United States ("Attorney General").

After his lawful removal from the United States, the defendant, using the name "Raul Martinez-Guadalupe," subsequently re-entered the United States and was present and found in the United States in Cicero, Illinois following a routine traffic stop on October 6, 2003. The defendant had not sought or obtained the consent of the Attorney General for re-application for admission to the United States. On June 4, 2004, in the U.S. District Court for the Northern District of Illinois, *United States v. Raul Martinez-Guadalupe*, 03 CR 972 (Zagel, J.), the defendant was convicted of reentering the United States after having been previously deported subsequent to the commission of the aggravated felonies previously described in this paragraph. Defendant was convicted under the name "Raul Martinez-Guadalupe." Defendant was sentenced to 37 months imprisonment and 36 months supervised release.

Defendant was lawfully removed from the United States to Mexico on June 28, 2006 at Laredo, Texas. Defendant was removed from the United States under the name "Guadalupe Raul Martinez." Defendant was again warned of the potential penalties for attempting to re-enter and re-entering the United States without the prior consent of the Attorney General and/or his designated successor, the Secretary of the Department of Homeland Security.

Defendant subsequently re-entered the United States. On September 22, 2007, the defendant was encountered by the Chicago Police Department during a routine traffic stop in the 2100 block of South Harding Avenue in Chicago. Defendant was present in the United States and was found by federal authorities in Chicago on October 11, 2007. At no time had the defendant sought or obtained the express consent of the Secretary of the Department of Homeland Security for re-application for admission into the United States.

### Maximum Statutory Penalties

7. Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

   a. A maximum sentence of 20 years' imprisonment. This offense also carries a maximum fine of $250,000. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

   b. In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty imposed.

### Sentencing Guidelines Calculations

8. Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

9. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

   a. **Applicable Guidelines.** The Sentencing Guidelines to be applied in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2007 Guideline Manual.

   b. **Offense Level Calculations.**

      i. The base offense level for the charge in the indictment is 8, pursuant to Guideline §2L1.2(a).

      ii. Pursuant to Guideline §2L1.2(b)(1)(A)(ii), the base offense level is increased by 16 levels, because defendant previously was deported after a conviction for a felony that is a crime of violence.

      iii. Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline §3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

    iv.  In accord with Guideline §3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline §3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

   c.  **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government and stipulated below, defendant's criminal history points equal 12 and defendant's criminal history category is V:

    i.  On March 18, 1994, in the Circuit Court of Cook County, Illinois, the defendant was convicted of attempted murder, aggravated battery with a firearm, aggravated discharge of a firearm, and aggravated battery (three counts). He was sentenced to six (6) years imprisonment on each count, except for the aggravated battery counts, for which he was sentenced to five (5) years imprisonment on each count. The sentences were to run concurrently. The defendant acknowledges that each of these convictions constitutes an aggravated felony and is a crime of violence as that term is defined by §§ 2L1.2 and 4B1.2(a)(1) of the U.S. Sentencing Guidelines. The sentences for these convictions resulted from offenses contained in the same charging instrument and were imposed on the same day.

Pursuant to Guideline §§ 4A1.1(a), 4A1.1(f) and 4A1.2(a)(2), the defendant receives a total of 6 points for these six convictions.

    ii. On June 4, 2004, in the U.S. District Court for the Northern District of Illinois, *United States v. Raul Martinez-Guadalupe*, 03 CR 972 (Zagel, J.), the defendant was convicted of reentering the United States after having been previously deported subsequent to the commission of the aggravated felonies described in the preceding subparagraph. The defendant was sentenced to 37 months imprisonment and 36 months supervised release. Pursuant to Guideline § 4A1.1(a), the defendant receives 3 criminal history points for this conviction.

    v. In or around June 2006, defendant was released from custody in Case No. 03 CR 372 and began serving his term of supervised release. Defendant unlawfully re-entered the United States and was found in the United States on or about October 11, 2007. Pursuant to Guideline § 4A1.1(d), defendant receives 2 criminal history points because the instant offense was committed while defendant was under a criminal justice sentence of supervised release.

    vi. Pursuant to Guideline §4A1.1(e), defendant receives 1 criminal history point because the instant offense was committed less than two years after release from imprisonment on a sentence exceeding one year and one month.

  d. **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 21, which,

when combined with the anticipated criminal history category of V, results in an anticipated advisory Sentencing Guidelines range of 70 to 87 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

     e.    Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon concurrence of the probation officer or the Court with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

     f.    Both parties expressly acknowledge that this plea agreement is not governed by Fed.R.Crim.P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant

shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

10.  The government is free to recommend whatever sentence it deems appropriate within the applicable guidelines range. The defendant is free to recommend whatever sentence he deems reasonable and appropriate, in accordance with the provisions of 18 U.S.C. § 3553(a).

11.  It is understood by the parties that the sentencing judge is neither a party to nor bound by this Plea Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

12.  Defendant agrees to pay the special assessment of $100 at the time of sentencing with a check or money order payable to the Clerk of the U.S. District Court.

## Presentence Investigation Report/Post-Sentence Supervision

13.  Defendant understands that the United States Attorney's Office in its submission to the Probation Department as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charge against him, and related matters. The

government will make known all matters in aggravation and mitigation relevant to the issue of sentencing.

### Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

14. This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 07 CR 268.

15. This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

16. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

    a.    **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

      i.      The trial could be either a jury trial or a trial by the judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

      ii.      If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

      iii.      If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

      iv.      If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

      v.      At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would

be able to confront those government witnesses and his attorney would be able to cross-examine them.

   vi. At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

   vii. At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

  b. **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the legality of the sentence imposed. Defendant understands that any appeal must be filed within 10 calendar days of the entry of the judgment of conviction.

  c. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

  d. Defendant understands that he will again be deported and removed from the United States and that, in order to lawfully re-enter the United States, he must obtain the

express consent of the Secretary of the Department of Homeland Security for reapplication for admission into the United States. Defendant further understands that if he re-enters the United States without obtaining such express consent, he will be subject to another prosecution for a violation of 8 U.S.C. § 1326.

### Conclusion

14. Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

15. Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

16. Should the judge refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound thereto.

17. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

18. Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 2/22/05

_____  
PATRICK J. FITZGERALD  
United States Attorney

_____  
GUADALUPE RAUL MARTINEZ  
Defendant

_____  
CHRISTOPHER R. MCFADDEN  
Assistant U.S. Attorney

_____  
ROBERT A. KORENKIEWICZ  
Attorney for Defendant